Court will proceed to the fourth case, Beason v. Marske. Deandre Beason has two independent grounds for relief. The government agrees that both grounds are meritorious in the sense that Beason shouldn't be serving an armed criminal sentence, but we dispute whether he can actually get relief from that sentence at this point via 2241. And the underlying question here with both grounds is were either of his claims sure losers back in 2013 when he had the opportunity to bring claims under 2255. If that's true of either of them, then Beason gets relief now. It's only if both of his claims were viable back in 2013 that he doesn't prevail here. So I'll start with the Spencer claim. Until Spencer was issued, Beason didn't have access to this claim for 2255 because his Andrews appeal precluded it. And then when Spencer was issued in 2014, opening this issue back up, pursuant with the law of the case doctrine, AEDPA's statute of limitations at that point barred it. The government is making the argument on this ground that Beason could have gotten around this statute of limitations by shoehorning the Spencer claim into his then existing 2255 motion. But the Supreme Court has been clear that a prisoner cannot use the civil rules to get around AEDPA's deadlines. Beason's claim that Wisconsin's sentencing structure took his drug offenses out of the textual definition of serious drug offense couldn't possibly relate back to his ineffective assistance argument that was about a different ACCA predicate related to Shepard documents that was drawing from a line of Supreme Court cases starting from from Taylor. And that's because his original 2255 application was not challenging those drug convictions, right? It was challenging that juvenile robbery conviction. That's correct. It was challenging the juvenile robbery conviction under the Taylor line of cases and it was kind of all about the use of Shepard documents. So if he would have tried to invoke rule 15 or something and amend his petition in light of Spencer, you would have expected a flag to be thrown on that, right? Saying you can't do that because, you know, you're starting with the challenge to a robbery predicate offense and now you're bringing in something altogether different, a challenge to these drug offenses. That is 2254 petitions and the government in 2255 petitions routinely relies on Supreme Court precedent that you can't use the civil rules to get around the deadline. Now if the original claim had been about his drug convictions and this was kind of a new aspect of that, there's no question that then he could relate back to it. But these were completely, completely different claims, different legal basis, different factual basis, different predicates. So that claim would have been futile then and that means that it's viable now under 2241. And that's enough for Beeson to get relief from his sentence, which is five years over the otherwise applicable maximum which expired early last summer. His case is unusual in that he has the second different meritorious claim that his only other potential ACCA predicate also doesn't count because his juvenile adjudication was for Wisconsin armed robbery, which does not categorically require the use of a gun, knife, or explosive device, which is the only kind of juvenile adjudication that can be used for ACCA. And this claim is a little bit more complicated to talk about only because it deals with the succession of case laws that we're all quite familiar with by now, starting with Taylor and ending more recently with Johnson and Mathis. But it's also a more typical application of the Savings Clause standard, if you look at the cases that we're all relying on. At the time that Beeson filed his 2255 motion, Woods foreclosed his claim. That was true before de Camps, it was true after de Camps, until Mathis came out and clearly showed that the holding, the portion of the holding of Woods, which was as the descent in Woods characterized the holding, was the panel treats statutes with lists as divisible. So that was the Mathis that finally overruled that and entitled Beeson to relief on this additional claim related to his juvenile adjudication. So in other words, with Woods, a precedent of this circuit at the time that it was, was later clarified by Mathis, right? Or corrected, if you will, by Mathis. Your point is that it's futile with Woods in the federal recorder. Right. For Mr. Beeson to try to challenge the juvenile armed robbery predicate. Precisely. I mean, Woods was solid circuit precedent at the time for precisely this point. And even after de Camps came out, as I discussed in the brief, the government was arguing to the Supreme Court. It was also arguing to this court in a number of different cases between de Camps and Mathis, including Edwards, one that I'm fairly familiar with, that de Camps stood for precisely the opposite of what it's saying de Camps stood for now. And so, you know, where you have any ambiguity in de Camps, well in this circuit that ambiguity was resolved by Mathis. And so, or sorry, by Woods. And so there was no claim until Mathis. We have this case called Groves too, right? Is that one of the ones that said that Woods is still good law? Yes, absolutely. I mean, it was really consistently applied and followed until Mathis came out and changed circuit law here. So, you know, habeas courts do have the authority under 2241 to address the fundamental legality of a conviction or sentence under this circuit's law. And at least where the illegality of that conviction or sentence did not become apparent until after the time for filing a 2255. And that's exactly where we stand in this case. So we would ask that you refer to the judgment and I'll save the rest of my time for rebuttal. Thank you, Ms. Wright. Mr. Koenig. Good morning and may it please the court. My name is John Koenig and I appear on behalf of Mr. Beeson's custodian, Matthew Marski. The arguments that Beeson now seeks to make by way of section 2241 habeas were not at the time of his section 2255 proceeding foreclosed by circuit precedent in the meaning of Davenport and its progeny. We have a fundamental disagreement about that. The government believes that Judge Conley got this right, that Beeson had an adequate and effective opportunity to test the validity of his sentence in the 2255 proceeding. So his case does not fall within the relatively narrow set of cases that are rescued by the saving clause. And this court should therefore affirm. If I may, I'd like to address the two arguments in a slightly different order from this fight, beginning with the Mathis argument that's directed at the armed robbery conviction. We maintain that Beeson had what Montana v. Cross calls an opening. It's a challenge to make this argument after June of 2013 when the Supreme Court decided they can't. So it's not as though Woods came out and it was frozen in time. There was a very significant subsequent development that affected the colorability of a Mathis-like argument. And indeed if you look at Mathis, Justice Kagan's theme seems to be, well, no disrespect to Justice Kagan, but the theme seems to be, duh, this is what we were saying all along. And you courts that didn't get it, you need to come on board. So and the other point I'd like to make is that litigants were making Mathis-like arguments before Mathis. Obviously Mathis himself in another circuit, but also defendants Edwards and Culio alluded to by Ms. Veit in her statement. In fact, Ms. Veit's reply brief in Culio's case was submitted a month before Mathis came down. And in it, the argument is as follows. Dicta in Woods regarding the divisibility of modes of commission, written pre-decamp, is not binding here, nor is it persuasive. Now I'm not saying that to play gotcha with Ms. Veit, she's a very fine attorney. I'm saying it merely to illustrate the point that the argument was not entirely futile. The law was not squarely against this Mathis-like argument that Beeson would like to make at the time in 2013 when he filed his 2255. It's pretty stacked though, right? I mean it takes lawyers as talented as you all, you know, pretty complicated briefs and standing here in the courtroom to walk us through, you know, very complex evolution of the law, right? And for a pro se petitioner to make heads or tails out of this, I mean that's one of the concerns I'll tell you I have. I mean I spent a lot of time trying to trace this through, you know, and I have a background that the petitioner doesn't. Yes, those are all fair points, Your Honor. The focus in determining whether a petitioner has an adequate and effective remedy really is procedural. It's do you have a square shot, an unobstructed procedural shot at making your argument. So even supposing that the petitioner here was reading our slip opinions as they came out, right? What the eye of the needle here that he would have to thread would be to say, you know what, I see woods and I see groves, but I think there's a little daylight left and lighted to camp. And so I'm okay, you know, I'm going to go forward. I mean, isn't that the practical import of it? Well, I understand what you're saying. I don't want to be cavalier about this at all because it's difficult. I think it's difficult for judges. It's certainly difficult for us as practitioners. I mean, I hear you. The law is the law, but I mean, it has a little bit of a practical air of unreality to it. But de Camp does say elements only, and the element here was a dangerous weapon, which was considerably broader than the federal definition that applied to juvenile convictions. So that argument was there. He had an impact on that issue. I have a couple of points on the Spencer claim. Spencer, excuse me, Beeson, did not have to wait until Spencer was in the federal reporter to make the Spencer claim. As Judge Conley pointed out, he could have done that before Spencer came down again. I realize he was pro se and all that, but at least in theory, anyone who took a close look at the way Wisconsin structures penalties could have said, hey, wait a second. This isn't really a 10-year maximum. It's a seven-and-a-half-year maximum. It doesn't meet the definition of serious drug felony under federal law. So we don't concede that point. I think there's a suggestion in the reply brief. What's he doing about our opinion, though, in that Anders context? Well, that's actually my next point. I'm a little confused by the law of the case line of argument because I don't understand if it applies in the habeas context how courts would ever go about correcting errors that went before. But let's assume for the sake of argument that law of the case does apply. The argument that was earlier raised was a little different about the Wisconsin predicates. It was whether a maximum penalty of 10 years counted as 10 years or more. That's really not the argument that was addressed in Spencer at all. So there wouldn't have been any law of the case precluding Beeson from raising a Spencer claim. So in conclusion, our opinion is that it supports the saving clause a little more broadly than at least two others, but we maintain under Davenport and its progeny that the saving clause is nevertheless still not an open-ended invitation to endless error correction. The law must have been squarely against a claim in order for this court to conclude that the 2255 remedy is inadequate or ineffective. It must have been futile. By contrast, if the defendant had an opening to make an argument, which we argue he did as to both claims, then the saving clause does not permit him to come back later and try again. That may well be unfortunate as Judge Conley noted. Neither Judge Conley nor me nor respectfully the members of this committee would want to see these issues within the framework that's been established by the case law, so I acknowledge that it may well be unfortunate and I just want to leave you on that note, but again we would ask you to affirm. Thank you, Mr. Conley. Ms. Veit. Thank you, Your Honor. I just want to first correct just a couple of points and I think this is a very, very minor point, but to be clear, Wisconsin armed robbery, the list of what can be used in armed robbery, it includes dangerous weapon, which itself goes beyond gun, knife, and explosive device. It also includes pepper spray and things fashioned, so it's a pretty long list. The second thing is that modifying an argument to make it stronger because you missed the better point that was very specifically barred under the law of the case doctrine, including in collateral proceedings. Of course, in collateral proceedings like 2255 and habeas, there are ways that you can reopen issues and the law of the case doctrine and habeas doctrine deals with that. The case in preparing for this argument, I found that most squarely covers this as people's versus United for, and that's that a modification and improvement of an argument does not reopen a claim that was rejected on appeal. And then the third point I want to make is that the question under the Savings Clause standard is not whether a person could have made an argument that the law should be changed. In every single case, a defendant, a prisoner can make an argument the law can be changed, and we as attorneys can often make those arguments. The question is, the law as it existed at the time, and I have quotes from all the different cases, starting with Davenport, would it have been futile? Was the law at the time squarely against him? Would he clearly have lost under the circumstances as they existed? And, you know, we're not asking to re-litigate everything willy-nilly. This court has made it clear that there must be something more than just a lack of success before 2241 is available to a prisoner, but this is the unusual case where there is something more. Thank you. Thank you. Thanks to all counsel and the panel.